## AS TO RECOVERY BY DIVORCED WIFE OF EXPENSES FOR CHILD'S SUPPORT.

Circuit Court of Cuyahoga County.

ELIZABETH C. HACKENBERG v. HARVEY E. HACKENBERG.*

Decided, May 23, 1911.

*Divorced Wife Can Not Charge Husband for Child's Expenses, When.*

When the mother of a minor child is awarded its custody, in a divorce
proceeding between her and the child's father, she is not thereby
clothed with authority in the first instance, and until the father
neglects or refuses to make suitable provision for the child's main-
tenance, to incur expense in that behalf, except only in those mat-
ters, to-wit, board and lodging, which are naturally incident to
the custody of the child while residing with its mother.

*Cushing, Siddall & Palmer* and *A. E. Powell,* for plaintiff in
error.

*Squire, Sanders & Dempsey,* contra.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

In the common pleas court the relation of the parties was the
same as here, the plaintiff claiming in her petition relief upon
three causes of action, all of which grew out of a divorce pro-
ceeding in Lorain county in 1903, wherein the plaintiff was
divorced from the defendant and given the custody of their
minor child. By alimony agreement, made out of court, there
was transferred to the plaintiff the homestead in this city,
worth from $7,500 to $8,000; the household goods therein con-
tained, and stocks of various companies in par value as follows:
National Carbon Company, $10,000; Dow Chemical Company,
$10,000; Iroquois Portland Cement Company, $5,000.

Since the settlement, the last named company has become in-
solvent, and the Dow Chemical Company's stock has depreciated
in the market.

*Affirmed, without opinion, 88 Ohio State.

Plaintiff's cause of action were, first, for the support and main-
tenance of the parties' son until his majority; second, for breach
of guaranty that said stocks would pay dividends at a rate not
less than. 6 per cent.; third, for deceit in representing the Iro-
quois Portland Cement Company's stock to be worth par, when
in fact it was at the time of transfer worthless.   The trial court
directed a verdict against the plaintiff as to the first and third
causes of action but submitted the second cause of action to the
jury, which found against the plaintiff.

By the first cause of action, the plaintiff sought to recover the
reasonable value of the support and cost of maintenance as
afforded by her to her son, so far as such provision was necessary
and proper for the youth's uprearing in his walk of life.   The
defendant introduced more than a score of letters written during
the latter's minority, in which he declares his willingness to
provide for the lad, and demands that he be consulted with and
applied to respecting the boy's needs.   Although these con-
tained some irrelevant matter they were properly admitted in
evidence upon the theory that if the father was willing and able
to supply his son's needs, the plaintiff had no right to anticipate
his action, notwithstanding that the custody of the lad had been
awarded to her by the decree of divorce, without express pro-
vision for his support.   The rule of *Pretzinger* v. *Pretzinger*,
45 O. S., 452, stands, of course, unchallenged to the effect that:

"The obligation of the father to provide reasonably for the
support of his minor child, until the latter is in a condition to
provide for his own support, is not impaired by a decree which
divorces the wife ' *a vinculo*' on account of the husband's mis-
conduct, gives to her the custody, care and nurture of the child,
and allows her a sum of money as alimony, but with no provision
for the child's support.   The mother may recover a reasonable
compensation from the father for necessaries furnished by her
to the child after such decree, and may maintain an original
action for such compensation against the father, in a court other
than that in which the divorce was granted."

The father accordingly made a regular allowance, such as he
deemed sufficient to meet the cost of his son's board and lodging,
this part of his maintenance being necessarily furnished by the

mother as an inseparable incident to her right of custody of the boy, so long as he remained at her home. For his clothing, tuition, pocket money, etc., except in so far as these might be supplied out of said allowance, the father insisted that he should be consulted about, and should authorize in advance, instead of having his credit pledged therefor at the mother's sole discretion.

The letters to his son, above referred to, were admittedly received by the latter and read by both him and his mother, who, however, refused to accede to the father's views. The expenses sought to be recovered under the first cause of action below were, therefore, incurred and paid by the mother, and not by the father.

We fail to find any authority precisely in point upon the question, but upon mature deliberation we hold, that the theory entertained by the court below is correct, and that the mother, notwithstanding that she was decreed the personal custody of the child, was not thereby clothed with any authority in the first instance, and until the father neglected or refused to make suitable provisions for his son's maintenance, to incur expense in that behalf, except only with regard to those matters, to-wit, board and lodging, which were naturally incident to the custody of the youth while residing with his mother. In other words, she was in no better position, by virtue of her right of custody, to pledge the father's credit for his son's maintenance, except in the particulars mentioned, than a stranger would be in. Any one may provide necessaries for a child and charge the same to the father, but not before the latter has refused or neglected so to do. Nor has the mother any wider authority, where the family relations have been disrupted by a decree of divorce obtained by her for the husband's agression, and awarding to her the custody of their child, save only that she may recover from the father in any case the reasonable cost of the child's board and lodging.

An attempt was made by the plaintiff below to produce evidence, consisting of her own testimony and that of an expert witness, to show that the reasonable cost of the support furnished by her to her son in this case amounted to a sum exceeding the allowance paid her for that purpose. She was asked:

"Mrs. Hackenberg, you may tell the jury what, in your opinion, was the reasonable value of the support of, care, clothing, educating, and similar things, afforded your son by you during the period from March 27, 1903, to July 7, 1907?"

Objection to this question was sustained and exception noted, and an offer made to show "that the witness would say that such things were of the value of $125 per month."

It is manifest that this question embraces items which, on the view above expressed, could not afford a basis of recovery without proof of the father's refusal or neglect to provide them, and it is further objectionable because the expression "similar things" calls for the conclusion of the witness as to what things were similar. There was therefore no error in this ruling.

For reasons already explained, the testimony of the plaintiff as to the clothes bought for the son was properly excluded. Her testimony as to the disposition of all her income offered for the purpose of showing by the elimination of the expenditures made for herself, that the residue was the cost of maintaining her son, is of course incompetent as a method of proving that fact.

Mrs. Mary McNeil, experienced in keeping a high class boarding house for many years, testified as to the cost of board such as that furnished young Hackenberg. This testimony was afterward properly excluded, because it appeared that her experience was limited to the keeping of boarders in a household of which she was herself a member, and in connection with which she obtained her own support, and she was admittedly unable to separate her costs from her profits.

There was no competent evidence left before the jury to show that the reasonable expense incurred by the mother for boarding and lodging her son exceeded the allowance made to her by the father for that purpose. And since there was also no proof whatever of any refusal or neglect of the father to provide suitably for his son's maintenance in this or in any other respect, the court was justified in directing a verdict for the defendant on the first cause of action, as was done.

The alleged guaranty, whereon the second cause of action was founded, was put in issue by the defendant's answer, as was also

the alleged breach thereof. The testimony in support of the making of such guaranty consisted chiefly of the testimony of the attorney for the wife in the divorce proceeding, by whom the agreement concerning alimony was negotiated for her. He testified at page 112:

"There was a great deal of talk along that line, and it was finally said by myself that so far as I was concerned in the negotiations, I would recommend to Mrs. Hackenberg a settlement of $25,000 in cash, the homestead on Grace avenue, that Mrs. Hackenberg should secure the divorce on account of the aggressions of her husband, that she should have possession of Albertus, and that an arrangement should be entered into to that effect, and that Mr. Hackenberg should pay for his tuition, his clothing and his maintenance with the mother."

On page 135 he testifies that Mr. Hackenberg said that he wanted Mrs. Hackenberg to take $10,000 in National Carbon stock, which he said was paying 7%, and Dow Chemical stock, $10,000 which he said was a gilt-edged secured stock, and was paying, I think, I am not just sure about that, but I think, one-half of one per cent. a month, or 6 per cent. a year; that it was a first class security, a first class stock; that the Iroquois Portland Cement Company's stock at that time was not paying dividends; that he would give $5,000 of that, but that they were making large quantities of cement successfully at that time, and were obtaining a good market for it, and selling it at a profit, and that it would be paying dividends in June or July of that year.

He further testifies:

"Then Mr. Hackenberg said 'these stocks will always pay at least 6% dividends. I am as much interested in Mrs. Hackenberg now as I ever was. I feel as kindly disposed toward her as I ever did. I want my family protected, and these stocks are better for her than cash. Besides, if she takes the stocks, I never want her to be induced by anybody to part with them for less than par. If anything should occur to reduce the value of these stocks, I will immediately notify her, and she can come in and I will take the stocks at par, but under no circumstances do I want her to sell or dispose of these stocks."

He subsequently testified that this proposition was accepted.

This version of the agreement certainly does not require proof, if indeed it can be said at all to warrant, an inference, of the correctness of the claim of guaranty on which the plaintiff sued. Moreover, as bearing upon the likelihood that such a guaranty was made, it appears that the negotiations was conducted along the lines of working out a substantially equal division between the parties of Mr. Hackenberg's net assets; and that this was accordingly done, he retaining a larger amount of each of the stocks which have since depreciated than he transferred to Mrs. Hackenberg, so that after the depreciation his share in the division became not only less than hers, but less than one-half of the valuation of her portion after deducting losses.

We see no reason to disturb the jury's finding implied in their verdict for defendant, that no such guaranty as the plaintiff claims was in fact made.

It follows that the errors alleged to have been made in ruling upon evidence of values of the stock in question are immaterial. Two errors in the charge are complained of. The first is in refusing to direct the jury to return a verdict for the plaintiff as to the Iroquois stock if they found that a guaranty had been made.

There was evidence from which the jury might have inferred if they had had occasion to pass upon the question, that the Iroquois stock was valueless; but plaintiff's evidence upon that subject was not conclusive, and it would have been error to require the jury to return a verdict for the plaintiff for the full par value thereof.

The colloquy of counsel and court was followed by this instruction:

"Now gentlemen, you see that the lawyers differ in that regard as to what the testimony was. It is for you to settle that matter from your recollection of the testimony. If your recollection of the testimony is that in June, 1908, if the evidence here shows that at that time the cement company stock had no value, then if the plaintiff recovers, the measure of recovery would be the par value of that stock with interest. If the evidence does not show that, if the evidence shows that that stock had some value at that time, then the amount of recovery, if the plaintiff recovers, would be the difference between that

value and the par value.   I will have to leave that for you gen-
tlemen to determine from your recollection of the evidence, pro-
viding you find that there was a warranty and breach of war-
ranty as to that stock.''

We find no error here.
The court charged:

''A warranty, if you find one to have been made, must have
been made by what was said and done on the 20th of March;
all agree to that.''

The plaintiff did not agree to that, but very heartily differed
therefrom.   It is, however, of no consequence whether the plaint-
iff did or did not agree, for the evidence showed that this agree-
ment was made and was consummated on the 20th of March,
when the negotiations reached their conclusion.   We find no
error in the charge in this respect.

The third cause of action for deceit was not seriously pressed,
and it is not now claimed that the court erred in the directing
of a verdict for the defendant in that behalf.

We find no error in this record, and the judgment is af-
firmed.

---

### MOTIVE IN CRIMINAL PROSECUTION.